Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

for the

District of

Division

Darnell Nash

_____

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

President Donald J. Trump

_____

_____

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names. Do not include addresses here.)*

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 5:25-cv-717 AGM PRL
*(to be filled in by the Clerk's Office)*

FILED - USDC - FLMO
NOV 12 2025 AM 8:08

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Darnell " YANNA" Nash |
| All other names by which you have been known: | ~~[illegible]~~ |
| ID Number | |
| Current Institution | |
| Address | |
| | City          State          Zip Code |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

**Defendant No. 1**

| | |
|---|---|
| Name | Donald J. Trump |
| Job or Title *(if known)* | President of United States of America |
| Shield Number | |
| Employer | 1600 Pennsylvania Ave N.W |
| Address | Washington DC 23607 |
| | City          State          Zip Code |

☐ Individual capacity    ☐ Official capacity

**Defendant No. 2**

| | |
|---|---|
| Name | WArden E. K. CArlton |
| Job or Title *(if known)* | WARDEN |
| Shield Number | |
| Employer | |
| Address | Bureau of Prisons, 846 N.E. 54th Ter. |
| | Coleman          FL          33521 |
| | City          State          Zip Code |

☐ Individual capacity    ☐ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3

Name _____

Job or Title *(if known)* _____

Shield Number _____

Employer _____

Address _____

_____

| *City* | *State* | *Zip Code* |

☐ Individual capacity    ☐ Official capacity

Defendant No. 4

Name _____

Job or Title *(if known)* _____

Shield Number _____

Employer _____

Address _____

_____

| *City* | *State* | *Zip Code* |

☐ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☑ Federal officials (a *Bivens* claim)

☐ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

The 8th, 1st, 5th and 14th Amendment. 8th Amendment retaliatory deliberate indifference to Mr. Nash's safety concerns and failure to protect from 200 rapes and retaliation for filing multiple grievances for misconduct and prison conditions

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed. MS. Nash has been subject to non-stop rape, sexual assault And retaliation for filing mutiple grievances for misconduct And prison conditions. Nash Also challenges the legality of wardens implementation Any enforcement of President Trumps Executive order, resulting in rape of Nash

## III.  Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐ Pretrial detainee

☐ Civilly committed detainee

☐ Immigration detainee

☐ Convicted and sentenced state prisoner

☑ Convicted and sentenced federal prisoner

☐ Other *(explain)* _____

## IV.  Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B. If the events giving rise to your claim arose in an institution, describe where and when they arose. The warden allowed Nash to be subject to A never ending series of sexual assaults. Not content with that, the warden Now seeks to use President Trumps Executive order to further victimize Nash - And all that despite court orders blocking the order, And the Prison Rape Elimination Act

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.    What date and approximate time did the events giving rise to your claim(s) occur?

Since the signing of President Trumps executive order Ms. Nash has been raped And violently sexually assaulted by multiple inmates And staff — Including being stripped searched In front of men And a Knifepoint rape.

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Ms. Nash has been raped over 200 times in BoP custody. Still, the Warden And his PREA staff refuse to protect Nash from Additional Abuse at all male high security prisons, saying "that President Trump signed An executive order directing the BoP to cease Any recognition of Trans people. ~~the abuse continues~~.

V.    **Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Ms. Nash is raped, sexually assaulted, issued bogus incident reports And denied Medical care to cover up such Abuse. The evidence is overwhelming

VI.    **Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

1.) A preliminary injunction blocking implementation And enforcement of President Trumps Executive order. 2) protection from rape And retaliation. 3) Enforcement of PREA protections 4) reinstatment of Transgender protections And policies in effect before the President. Executive order. Finally, the BoP paid 163 million dollars to settle BoP "RAPE CLUB" prison prisoners claim And so Ms. Nash, transgender, And previously repeatedly raped, Ask for 9.5 million dollars for the Acts committed.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes

☐ No

☑ Do not know

If yes, which claim(s)? Protection from Rape, Transgender health care, And PREA retaliation assessments, under section 115.67

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**D.**    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

**E.**    If you did file a grievance:

1.    Where did you file the grievance?    The institution, resional, And central office

2.    What did you claim in your grievance?    Race, Retaliation And requested that BoP comply with judges recommendation to place Nash in A halfway house for maximum time.

3.    What was the result, if any?    The grievance were either ignored, Not processed, or returned unfiled. Resional And Central office Appeals were rejected.

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Ms. Nash completed the Grievance process.

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

    2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.    Ms. Nash Filed multiple emergency grievances under the Prison Rape Elimination Act, which require A initial response in 48 hrs and A final Agency decision in Five days. These grievance were not processed or rejected.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s)    _____

Defendant(s)    _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.    Docket or index number

_____

4.    Name of Judge assigned to your case

_____

5.    Approximate date of filing lawsuit

_____

6.    Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition.    _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

   ☐ Yes

   ☐ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

    1.   Parties to the previous lawsuit
        Plaintiff(s) _____
        Defendant(s) _____

    2.   Court *(if federal court, name the district; if state court, name the county and State)*

        _____

    3.   Docket or index number

        _____

    4.   Name of Judge assigned to your case

        _____

    5.   Approximate date of filing lawsuit

        _____

    6.   Is the case still pending?
        ☐ Yes
        ☐ No
        If no, give the approximate date of disposition _____

    7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

        _____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        10-20-2025

| | |
|---|---|
| Signature of Plaintiff | |
| Printed Name of Plaintiff | DArnell Nash |
| Prison Identification # | 31505001 |
| Prison Address | P.O. Box 1034 |
| | Coleman                FL        33521 |
| | City                 State      Zip Code |

### B.    For Attorneys

Date of signing:        _____

| | |
|---|---|
| Signature of Attorney | |
| Printed Name of Attorney | |
| Bar Number | |
| Name of Law Firm | |
| Address | |
| | City                 State      Zip Code |
| Telephone Number | |
| E-mail Address | |

In re, Complaint for Violation of Civil Rights

Darnell "YANNA" Nash

v

President Donald J. Trump

A.) MS. NASH has exhausted her Administrative remedies. (Exh. __A__ )

B.) The BOP has been enjoined from implementing President Trump's Executive order (PTEO). Still, the BOP not only disbanded the Transgender Executive Council (TEC), tore up the Transgender Offender Manual, but Coleman II is no longer excluding Transgender inmates from strip searches conducted by male staff, And no longer provide pat search exemptions, And stop providing gender affirming surgeries, as well as denying them Prison Rape Elimination Act protections.

Something else: The Prison Rape Elimination Act (PREA) marked a critical step in condemning and curbing sexual assault and harassment in prison. Still, the BOP sits idly by And watch while the number of rapes Against MS. NASH increase. "Since she began serving her sentence ten years ago, MS. NASH has been brutally raped And assaulted by both inmates And a prison guard on 196 occassions" (Exh __B__ , pageId 1856 )

Finally, for far to long, the BOP has Actively concealed rapes And sexual assaults Against MS. Nash, And shielded both inmates And staff predators from Accountability, At every turn. Indeed, such stonewalling has persisted in spite of A federal court of Appeal ruling based "on the more than one-hundred rapes And sexual assaults [Nash] has suffered at the hands of prison guards And fellow inmates, while incarcerated in men's prisons" (Sixth Circuit, No 23-3635, Dkt, 18-1, pageID #4)

The bottom line is this; For ten years the laws And court rulings affirming Trans dignity And rights have consistently been circumvented by ingenious evasions which render them void in practice — Indeed, the PREA Act And other laws passed for Trans Victims benefit Are so widely unenforced that it is A mockery to call them laws.

C.) It's true PTEO stripped trans people of their rights And their dignity. However, the EO does not supersede or change the BOP's obligation to comply with the PREA Act

Despite repeatedly requesting protection from rape And retaliation, which Are required under PREA, the warden refuse to Act citing PTEO. (Exh C ) This cannot be so — carving out An exception to the PREA Act to ensure a biased result in the BOP's favor is not authorized by PTEO.

° D) PTEO is being used for the discriminatory purpose of excluding Nash from A PREA retaliation assessment, under section 115.67

The PREA coordinator was required to protect Ms. Nash from the erroneous deprivation of earned FSA credits due to rape And retaliation when she reported the Abuse. Yet, the PREA coordinator refuse to do so, citing PTEO, (Exh D )

The point is PTEO is not only being used to disguise the horrific treatment of Ms. Nash, but is A dishonest way to circumvent the Antiretaliatory regulation of the PREA Act.

° E) But for the misuse of PTEO, the denial of Nash's FSA early release request Would not have taken place

Example: The BOP repeatedly failed to protect Nash from rape And protect her from prison employees falsifying disciplinary reports to cover up such Abuse.

Nonetheless, And despite his obligation not to do so under PREA, the warden denied Nash's FSA request, citing her failure to "maintain clear conduct for 3 years from the date of request". That's Absurd — Nash met the burden of showing that the incident reports were false but the warden took no corrective Action, in violation of PREA. (Exh E___ )

Guards refused to Act when Nash sought protection from prisoners And staff pursuing her for sex, then retaliated Against her when she filed complaints. Here, the notion that the BOP cAn misuse PTEO to deny Nash earned FSA credits is profoundly shocking And A violation of the constitution. After all, the entire reason for this problem is the warden's own effort to silence And discredit Nash. (Exh F___ )

∘F) The BOP is incapable of formulating A plan that safeguards Ms. Nash's physical And mental health. Accordingly, Nash's sentencing judge recommended that the BOP place Ms. Nash in A halfway house for

the maximum term before her release. "Defendant's placement in A residential reentry center will assist defendant in transitioning into the community And equip her with stability And skills that should minimize her risk of recidivism" (Case # 1:13-CR-00467, Doc # 332, page Id # 2428)

The point here is this; MS. NASH has been repeatedly raped, urinated on, forced to ingest feces, chocked unconscious, And had one inmate shove A shampoo bottle up her rectum. There is little, if Any, incentive for MS. NaSH to reoffend under these circumstances. Still, the warden denied the judges recommendation, citing PTEO. That is unconstitutional.

• ⑥) MS. NaSH was sexually Abused by prison staff And retaliated Against when she filed complaints. Still, the warden — in collusion with the cheif psychologist — barred the victim Advocate from taking certain measures to Ameliorate or avoid the ongoing violation of Nash's rights under PREA. (Exh __G__ )

Again, the erroneous deprivation of Nash's FSA request would not have occured but for the wardens unlawful conduct in continuing to Apply PTEO.

H) To comply with PTEO Coleman II has Adopted A rule barring PREA protections.

Specifically, during program reviews unit managment staff will twice-yearly review the inmates current housing unit status And programming available for Transgender inmates. "in making housing unit And programming assignments, A Transgender inmate's own views with respect to his or her own safety must be given serious consideration, 28 C.F.R. 115.42(d)

According to Section 115.42 (d), Ms. NASH voiced concerns regarding her placement in An all male high security prison, And her concerns regarding being celled with convicted sex offenders. Yet, instead of soliciting Nash's views on the type of facility in which she would feel most safe NASH's unit team ignored Nash's concerns, citing PTEO. That's unconstitutional.

I) The denial of Gender Affirming Surgery is not authorized by PTEO.

Ms. NASH has undergone several gender affirming surgeries, And Now presents As A women. "Ms. NASH has undergone breast Augmentation, facial feminization, bilateral orchiectomy, And A tracheal shave" (Exh B pgId#2)

Nonetheless, the warden denied Nash's request for Gender Affirming Surgery, citing PTEO.

Another thing: Both the medical management of Transgender inmate Guidance And the Gender Affirming Care Guidance states that " because untreated or under treated Gender Dysphoria is associated with increase morbidity And mortality screening for Gender Dysphoria in Transgender individuals is essential. Without treatment this population may experience high rates of depression, Anxiety, self-harm And suicidality.

Despite all that, the warden refused to process Nash's request for Gender Affirming Surgery, citing PTEO. That's unconstitutional. " For gender confirmation surgery the warden at the respective institution will first request An administrative review by the Transgender Executive Council " see. Gender Affirming Care Guidance

• J) The BOP disbanded the Transgender Executive Council. "Transgender Executive Council was responsible for inmate designations and the Council was required to consider An inmate's current gender expression And was in charge of enforcing certain policies" Nash, case # 1:13-cr-00467, Doc # 324, pageID # 2320

The point is the BOP dissolved the TEC, which means Transgender prisoners Are at the mercy of their wArdens And the wArdens, predictAbly, Are failing miserAbly to protect them. The BOP established A TEC And standardized policies And practicies to improve conditions for TrAns prisoners.

• K) The temporary restraining orders And temporary injunction to PTEO required the BOP to reinstate both the TEC And the TEC inmate email box

Ms. NAsh is in imminent dAnger because her PREA complaints Are being ignored. "NAsh seeks to compell Access to the emergency grievance process At USP ColemAn, where she has been transferred, And alleges that she continues to suffer rapes at USP Colemam" In re: Darnell NAsh, case # 25-3153, Doc # 8-1, pageId # 1 (6th cir 7-28-2025)

Still, the BOP refuse to reinstate the TEC inmate email box, "until further notice, the Transgender Executive Council (TEC) will Not be monitoring their inmate email box. Therefore, inmates should not expect to recieve Any response from the TEC" NAsh, case # 1:13-cr-00467, Doc# 324-1, pageId # 2327 (N.D. oHIo 3/7/2025)

5

The point is despite dangerous And unconstitutional conditions at Coleman II, along with high levels of sexual violence, Ms. Nash has no tools at her disposal to remedy the situation — Nothing in PTEO justify that result.

) The TEC, had it Not been disbanded, would've been under A duty to protect Nash from rape And sexual assault.

Since the signing of PTEO Ms. Nash has endured additional Abuse — including A knife point rape And Another rape witnessed by A prison guard. (Nash, case # 1:13-cr-00467, Doc # 328 citing 13 Additional rapes since the signing of PTEO )

The point is despite court orders requiring it to do so, the BoP refuse to reinstate the TEC— resulting in Additional Abuse And strife for Ms. Nash.

L) Ms. Nash is being mishoused in A facility intended for the opposite sex. And mutiple courts have issued preliminary injunctions on TRumps policy terminating medical care And moving Trans women to men's prisons, 12 trans women held by the BoP were granted A restraining order And temporary injunction to the removal policy. see: Doe v. Bondi, 2025 u.s. Dist 'LEXIS 35007 (D.D.C.)

Still, the warden refuse to refer the matter to the TEC for advice and guidance on designation. That's unconstitutional - the TEC offers Advice And guidance on unique measures related to treatment And managment of Transgender inmates, including vulnerability to Sexual victimization And designation issues.

M) But for the wardens refusal to consult with the TEC, the denial of the courts recommendation to place MS. NASH IN a halfway house would not have happened.

In deciding whether to comply with the judges recommendation the TEC consider A multitude of factors, including A Transgender inmate reentry needs. " It is this lack of ~~inmate~~ [reentry] prepardness coupled with hope for Defendant's post - release success that motivates the Court to modify the sentence to recommend the [BOP] consider placing Defendant in A halfway house for the maximum term before her release" NASH, case # 1:13-cR-00467, Doc# 332, page Id 2429.

Because of the rapes and subsequent placement in secure housing for her own protection and her repeated transfers to different facilities Nash has not been able to begin or finish any programs. Yet, no one in a position of power, whether the warden or PREA staff, has any concern about this. That's unconstitutional — the steps officials have taken — mostly placing Nash in segregated housing and transferring her to other male facilities - have not provided necessary protections and have instead perpetuated a significant, extended, and continuing cycle of harm, amounting to a constitutional violation.

- N) Ms. Nash was denied her constitutional right of safe confinement and protection from retaliation, which in turn led to the loss of earned FSA early release credits. Here, the TEC - had it not been disbanded — would've been under a duty to protect Nash from the erroneous deprivations of earned FSA credits

First, the failure to consult in any way the TEC cannot be excused on the basis of PTEO - indeed, the executive order has been blocked by the courts.

Second, relying on false incident reports to deny NASH's FSA request, as well as the wardens reliance on retaliatory "housing and programming changes" to deny NASH's FSA request was not authorized by PREA and was accordingly unlawful.

Basically, what the BOP is saying is: Yes there is overwhelming evidence to support a finding of rape and retaliation, and yes PREA imposes a duty to act promptly to remedy anything that might suggest possible retaliation, but the TEC — the BOP's officals decision making body on all issues affecting the Transgender population — has been disbanded. That's unconstitutional.

• (1) The TEC, had it not been disbanded, would've been under a duty to prevent NASH from being designated to USP Coleman II.

BOP staffers collaborated with an inmate to perpetrate a rape against Ms. NASH. As described in a psychological report: " SHU officers put me in a chcckhold, dragged me down a SHU range and shoved me handcuffed and defenseless into a SHU cell with an uncuffed inmate, then left me there to be raped for over an hour." (NASH, case # 1; 13-CR-00467, Doc # 213, Defendant's Exhibit F)

The point is Coleman II has demonstrated a pervasive pattern of disregard for and a violation of the rights of Transgender offenders - including the right to be protected from foreseeable dangers as laid out in FARMER V. BRENNAN, 511 U.S. 825 (1994).

BoP have known about staff abuse and harmful conditions at Coleman II for years. Yet, designation staff refuse to refer the matter to the TEC for advice and guidance on designation.

P) By unilaterally eradicating the TEC, the BoP has effectively neutered the PREA Act and encouraged a culture of lawlessness within Coleman II.

In direct opposition of PREA's requirement not to use solitary confinement as a protective tool the BoP frequently respond to Nash's safety issues with the punishment of solitary confinement.

Example: Officer Ray was clear in the body of her written report that she observed Ms. Nash being raped by inmate Farrigton. Officer Ray also documented Nash's sexual assault report writing " As I was escorting inmate Nash to the T.V. room he stated that he was raped "

Nonetheless, And despite his obligation not to do so under PREA, the warden placed Ms. Nash in involuntary segregation lockdown, This action Appears to be taken in retaliation for filing her PREA complaints. Indeed, solitary confinement was not necessary for Ms. Nash's own protection, given that the three men who raped her were being held at a different BOP prisons.

The point is PTEO is enabling corruption, misconduct, And Abuse Against Transgender offenders. Indeed, the warden stated that Trans women had no rights that he was bound to respect.

**Q) BOP Jettisons Transgender Offender Manual**

The disbandment of the Transgender Executive Council, the shredding of the Transgender Offender Manual, And the denial of A victim Advocate, as required under PREA, Means Nash has no institutional support to address Prison Rape Elimination Act concerns, Nor the erroneous depravations of earned FSA credits due to rapes And retaliation, in violation of PREA, or the federal judges recommedation that BOP place Nash in A halfway house. "How can Nash safely participate in education And training courses if she is being repeatedly

8

raped by inmates And staff" And " when safe to do so, Nash has participated in recidivism reduction classess" Nash, case # 1:13-cr-00467, Doc # 332, page Id 2429 — Noting Nash's retort to government's Argument that she has not offered sufficient evidence of education And training.

R) The rapes and ~~coordinated~~ the coordinated cover ups that followed each assault has kept Nash trapped in all male high security prisons — the most dangerous setting for Transgender female prisoners. In fact, Nash has been raped over 200 times.

The point is the TOM authorizes prison officals to house prisoners with male genitalia with women prisoners. The TOM Also contain provisions concerning housing And programming assignments for Transgender inmates who desire to transfer facilities As part of their transition. Finally, the manual that the BOP tore up provided guidance to staff in treating trans people in A manner consistent with the PREA Act, which require the BOP to protect from retaliation Any prisoner who reports sexual Abuse.

5) The misuse of PTEO allowed the warden And his PREA staff to circumvent important restrictions imposed by the 8th Amendment, And First Amendment.

### 8th Amendment

MS. Nash has been repeatedly raped, pimped out for economic gain, forced to have sex to stay Alive And remain extremly vulnerable to Abuse, assault And, even death over the balance of her sentence. To expect such A world to rehabilitate wrongdoers is Absurd. To allow such A world to exist is unconstitutional. Still, the warden refuse to ensure that Nash's Eight Amendment rights Are protected, citing PTEO.

In sum, incarcerated people have A right under the 8th Amendment to be protected from sexual Abuse, As the US court of Appeals for the 11th circuit explained in Sconiers v. Lockhart " Some things Are never acceptable, No matter the circumstances, Sexual Abuse is one.

remedy Anything " that may suggest possible retaliation " 28 C.F.R. § 115.67 (c) And (d)

Example #2: The assaults, sexual Abuse, rape, And solitary confinement faced by Nash can only be described as Acts of torture. Not merely that: After years of sexual violence, It seems highly probable that Ms Nash poses A far lower risk of criminal Activity than she did when she was sentenced in 2014.

Still, the warden refuse to comply with the judges recommendation to place Nash in A halfway house, citing PTEO. Here, the Absence of good faith with respect to the legal position the warden relies on in support of its refusal supports A finding of retaliation — indeed, PTEO has been blocked by the courts.

Example #3: In retaliation for bringing her PREA complaints the BoP denied Nash Access to recidivism reduction programs. Still, the warden denied Nash's FSA early release request, citing her failure to program.

Here, again, what legitimate, non retaliatory explanation could the warden articulate for refusing to take corrective Action. Indeed, retaliatory " housing And program '" changes

## First Amendment

The improper application of PTEO was impermissible retaliation for her First Amendment protected activity when she filed her prior lawsuits and complaints against BOP and its staffers.

The Warden had two goals. Goal #1 was to continue the campaign of harassment and retaliation initiated by prison staff. Goal #2 was to bury the illegal action, to create the cover-up needed to deny Nash's FSA request.

Example #1: the warden has in his possession legal documents finding " more than one-hundred rapes and sexual assaults [NASH] has suffered at the hands of prison guards and fellow inmates while incarcerated in men's prisons". Still, the Warden will not provide Nash a PREA retaliation assessment, citing PTEO

Its true loyalty to the BOP uniform is prized above all else, but sexually assaulting prisoners and covering for each other is not authorized by PREA. PREA, section 115.67 states that, in cases of prisoners, the BOP must perform " periodic status checks" to look for "changes that may suggest possible retaliation" and must " act promptly to

requested Administrative remedy forms
And court filing fee forms (Exh L )

The bottom line: A warden who allows his
staff to set up inmate on inmate rapes
should not be entrusted with NASH's
PREA complaints or FSA early release decision.
Note: The Sixth Circuit granted MS. Nash's
motion to disqualify Judge Nugent, finding the
"district court ignored the facts of Nash's
Assaults, trivialized her motion" as repeating
the same Arguments Already decided created
the Appearance that he was biased Against
[NASH]" (Sixth Circuit No. 23-3635, Dkt. 18-1,
at PageID #7) That ruling And rationale
Applies with equal force to the instant case
And compel granting NASH's request to
disqualify warden E.K. CARLTON.


V) The Supreme court has interpreted the
due process clause of the Fifth Amendment
as forbidding the federal government from
denying to Any person the equal protection
of the law. Here, equal protection And
due process rights have been infringed
because NASH is being treated differently
than 1.) other Transgender women being
housed in women facilities And 2.) other
Cisgender women at BOP "Rape Club" prison.

Are specifically mentioned as suggesting possible retaliation under PREA, section 115.67

In som, the improper Application of PTEO constitute a first Amendment retaliation claim pursuant to section 1983.

7) The WArden is Not An impArtial decision-mAker

The WArden was Angry with Ms. Nash for complaining, discouraged her from doing so, And behaved in A way that would suggest he resented Nash for complaining. These Acts is sufficient to demonstrate the degree of bias necessAry to prove A due process violation.

To be clear: the WArden denied Nash A bra (Exh H ), denied Nash soap to wash blood And semen out her hair (Exh I ); issued her fAlse incident reports to discourage her from complaining (Exh J ); discontinued her house Alone status And celled her with A sex offender (Exh K )

Additionally, the WArden in order to retaliate Against Nash for bringing her PREA complaints refused to process Nash's emergency grievances And refused to provide

Equal protection principles extend to protect people from so called "class - of - one" discrimination in which the government Abitrarily And irrationally singles out one person for poor treatment.

• V) The TOM authorizes prison officals to house prisoners with male genitalia with women prisoners. Still, the warden denied NASH's request for A transfer related to pursuing her individual transition.

The point is Ms NASH is being denied Gender Affirming surgery, whereas, other Trans prisoners Are being provided Gender Affirming Surgery. "The TEC recommended that [Trans prisoner] Iglesias be referred to A surgeon for consultation for Gender Affirming surgery approximately one month after she is placed in A Residential Reentry Center" see 2021 U.S. Dist Lexis 245517 Iglesias v. Fed, Bureau of Prisons

•W) MS NASH is being housed in male prison facilities, whereas, other vulnerable TRANS women Are housed in female prison facilities

Although numerous prison psychologist And medical experts employed by or working for the BoP recommended against housing NASH in a USP, the most dAngerous setting for federal prisoners, BoP officals persisted in placing her in situations where she was continually abused, raped And subject to Not only Sexual predation but ridicule And insuits from the very staff members sworn to protect heR.

The point is prioR to — And even after the implementation And enforcement of PTEO — vulnerAble TRans women where being held in women prisons to protect them from sexual Abuse.

- X) MS. NASH is being intentionally treated differently from women at BOP "Rape Club" prison. Rape And retaliation should not be A routine feature of Any prison system, but it has become one in the BOP. Indeed, the federal prison in Dublin Califorina had such A pervasive And toxic culture of sexual Abuse that it became known as the "Rape Club" with the former Warden And six staffers already sentenced.

The bottom line here is this: on one hand, Nash's claims of sexual Abuse And retaliation Are vigorously defended by A BOP unwilling to shoulder responsibility for the years-long Abuse of MS. NASH.

On the other hand, the BOP continued to try to bring the horrific saga of the FCI Dublin "Rape Club" to An end by agreeing to settle dozens of lawsuits brought by women prisoners who were victimized by sexual abuse — including rape — by BOP staff at the Now closed women's prison. The BOP staff also agreed to A consent decree Addressing the Abuse And retaliation Against

those who spoke up about it.

The BOP said that it "takes its duty seriously to protect the individuals in our custody ... [AND] is dedicated to appropriately addressing the consequences of sexually abusive behavior at FCI Dublin. Unfortunately, there's a complete lack of intrest in "addressing the consequences of sexually abusive behavior against Ms. Nash — including the retaliatory denial of earned FSA credits, and her judges recommendation to place Nash in a halfway house. This is a violation of equal protection.

## Conclusion

The safety and health of every Transgender person in the United States is guaranteed by the 8th Amendment of the U.S. constitution. Farmer v. Brennan "being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society". And " a prisoner seeking prospective relief "for unsafe conditions", does not, however, need "to await a tragic event such as an actual assault before obtaining relief" Id at 845.

Accordingly, the court should grant Nash's request.